SHORT RECORD
26-3015
Filed 10/02/2026

APPEAL,CLOSED,JPS−AW,PRISONER,RF

# United States District Court
# Eastern District of Wisconsin (Milwaukee)
# CIVIL DOCKET FOR CASE #: 2:24−cv−00895−JPS

O'Boyle v. Sheremeta et al
Assigned to: Judge J P Stadtmueller
Demand: $3,501,000
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 07/17/2024
Date Terminated: 08/31/2026
Jury Demand: Defendant
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Ryan P O'Boyle** represented by **Ryan P O'Boyle**
Updated 1/21/26 in 24cv895
4715 W Howard Ave
Greenfield, WI 53220
PRO SE

V.

**Defendant**

**Mark Sheremeta** represented by **Clint B Muche**
City of Milwaukee
841 N Broadway − 7th Fl
Milwaukee, WI 53202
414−286−6195
Email: cmuche@milwaukee.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ana Romero−Perez** represented by **Clint B Muche**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kristopher Maduscha** represented by **Clint B Muche**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jaclyn Alvarado**
*TERMINATED: 08/15/2024* represented by **Wisconsin Dept of Justice − 1983 Actions**
Email: DLSFedOrdersEastCL@doj.state.wi.us
*TERMINATED: 09/05/2024*

**Defendant**

**Nash Dathe** represented by **Clint B Muche**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Juan Garcia**
*TERMINATED: 07/08/2025*

**Defendant**

**Nathan Locicero** represented by **Clint B Muche**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alan Carsky** represented by **Clint B Muche**
*TERMINATED: 03/26/2025*
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Shawn Humitz** represented by **Clint B Muche**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/17/2024 | 1 | PRISONER COMPLAINT against All Defendants by Ryan P O'Boyle. (Attachments: # 1 Summary of Allegations, # 2 Envelope)(rcm) |
| 07/17/2024 | 2 | MOTION for Leave to Proceed Without Prepayment of the Filing Fee, MOTION for Preliminary Injunction by Ryan P O'Boyle. (rcm) |
| 07/17/2024 | 3 | LETTER from the clerk to Ryan P O'Boyle re Consent/Refusal to Magistrate Judge Stephen Dries and requesting that the consent/refusal form be filed within 21 days. Also requesting payment of the full filing fee or that a petition to proceed without prepayment of the full filing fee and six−month certified trust account statement be filed within 21 days. (rcm) |
| 08/01/2024 | | FILING FEE Received: $405.00, receipt number 6565. (jmk) |
| 08/07/2024 | 4 | Magistrate Judge Jurisdiction Form filed by Ryan P O'Boyle. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (rcm) |
| 08/07/2024 | 5 | MOTION for Leave to Proceed Without Prepayment of the Filing Fee by Ryan P O'Boyle. (rcm) |
| 08/07/2024 | 6 | Prisoner Trust Fund Account Statement by Ryan P O'Boyle. (rcm) |
| 08/15/2024 | 7 | SCREENING ORDER signed by Judge J P Stadtmueller on 8/15/2024. IT IS ORDERED that Plaintiff Ryan P. OBoyle's motions for leave to proceed without prepaying the filing fee, ECF Nos. 2 , 5 , be and the same are hereby DENIED as mooted by his payment of the filing fee; IT IS FURTHER ORDERED that Jaclyn Alvarado be and the same is hereby DISMISSED as a defendant from this action; IT IS FURTHER ORDERED that the Clerk of Court shall add the John Doe Defendants |

| | | |
|---|---|---|
| | | as a placeholder on the docket for the three unknown officers; IT IS FURTHER ORDERED that the U.S. Marshals Service shall serve a copy of the complaint, ECF No. 1 , and this Order upon Defendants Mark Shereneta, Ana Romero− Perez, and Christopher Maduscha pursuant to Federal Rule of Civil Procedure 4. IT IS FURTHER ORDERED that Defendants Mark Shereneta, Ana Romero− Perez, and Christopher Maduscha shall file a responsive pleading to the complaint. (cc: all counsel and mailed to pro se party with copies of guides "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions"; Order mailed to Warden of Institution)(rcm) (Main Document 7 replaced on 8/15/2024) (rcm). |
| 08/15/2024 | 8 | TRANSMIT Complaint, Screening Order, Notice, Waiver, Consent to USMS on 8/15/2024 for service on Defendants Mark Shereneta, Ana Romero−Perez, and Christopher Maduscha. (rcm) |
| 08/26/2024 | 9 | MOTION for Preliminary Injunction by Ryan P O'Boyle. (Attachments: # 1 Cover Letter, # 2 Envelope)(rcm) (Additional attachment(s) added on 8/27/2024: # 3 Exhibits) (rcm). (Entered: 08/27/2024) |
| 08/26/2024 | 10 | MOTION for Default or Summary Judgment by Ryan P O'Boyle. (Attachments: # 1 Cover Letter)(rcm) (Entered: 08/27/2024) |
| 09/04/2024 | 11 | NOTICE of Appearance by Clint B Muche on behalf of Christopher Maduscha, Ana Romero−Perez, Mark Shereneta. Attorney(s) appearing: Clint B. Muche (Attachments: # 1 Certificate of Service)(Muche, Clint) |
| 09/04/2024 | 12 | Magistrate Judge Jurisdiction Form filed by Christopher Maduscha, Ana Romero−Perez, Mark Shereneta. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Muche, Clint) |
| 09/06/2024 | 13 | WAIVER OF SERVICE Returned Executed by Christopher Maduscha − Waiver sent on 8/15/2024. (rcm) |
| 09/06/2024 | 14 | WAIVER OF SERVICE Returned Executed by Mark Shereneta − Waiver sent on 8/15/2024. (rcm) |
| 09/06/2024 | 15 | WAIVER OF SERVICE Returned Executed by Ana Romero−Perez − Waiver sent on 8/15/2024. (rcm) |
| 09/06/2024 | 16 | US Marshal 285 Form as to Defendants Mark Shereneta, Ana Romero−Perez, and Christopher Maduscha − Waivers of Service filed. (rcm) |
| 09/09/2024 | 17 | ORDER signed by Judge J P Stadtmueller on 9/9/2024. IT IS ORDERED that Plaintiff Ryan P. O'Boyle's motion for default or summary judgment, ECF No. 10 , be and the same is hereby DENIED without prejudice; and IT IS FURTHER ORDERED that Plaintiff Ryan P. O'Boyle's motion for a preliminary injunction, ECF No. 9 , be and the same is hereby DENIED without prejudice. (cc: all counsel and mailed to pro se party)(rcm) |
| 09/23/2024 | 18 | MOTION for Unconditional Release from Custody by Ryan P O'Boyle. (Attachments: # 1 Cover Letter, # 2 Envelope)(rcm) (Entered: 09/24/2024) |
| 10/03/2024 | 19 | DECLARATION of Ryan O'Boyle (Attachments: # 1 Cover Letter, # 2 Envelope)(rcm) |
| 10/14/2024 | 20 | |

| | | |
|---|---|---|
| | | ANSWER to Prisoner Complaint with Jury Demand *AND AFFIRMATIVE DEFENSES* by Christopher Maduscha, Ana Romero−Perez, Mark Shereneta.(Muche, Clint) |
| 10/23/2024 | 21 | ORDER signed by Judge J P Stadtmueller on 10/23/2024: DENYING 2 Plaintiff's Motion for Preliminary Injunction and DENYING 18 Plaintiff's Motion for Unconditional Release from Custody. (cc: all counsel, via mail to Ryan P O'Boyle at Milwaukee Secure Detention Facility)(jm) |
| 11/04/2024 | 22 | SCHEDULING ORDER signed by Judge J P Stadtmueller on 11/4/2024: Amended Pleadings due by 11/25/2024; Discovery to be completed by 3/24/2025; Interim Settlement Report due by 4/25/2025; Summary Judgment Motions due by 5/5/2025 and shall comply with specified requirements. Parties must meet and confer at least 45 days prior to filing a motion for summary judgment; within 14 days after the meet and confer, the parties must file an executive summary of that motion as directed. Plaintiff to identify any remaining John Doe defendants and amend his pleadings accordingly within 90 days or the John Doe defendants will be dismissed without further notice. The parties should carefully review this Scheduling Order for further details. See Order. (Attachments: # 1 Local and Federal Civil Rules) (cc: all counsel, via mail to Ryan P O'Boyle at Milwaukee Secure Detention Facility)(jm) |
| 11/27/2024 | 23 | AMENDED COMPLAINT against John Doe Defendants, Christopher Maduscha, Ana Romero−Perez, Mark Shereneta filed by Ryan P O'Boyle. (Attachments: # 1 Cover Letter, # 2 Attachments)(rcm) |
| 12/10/2024 | 24 | ANSWER to 23 Amended Complaint with Jury Demand *and Affirmative Defenses* by Mark Shereneta, Ana Romero−Perez, Christopher Maduscha. (Attachments: # 1 Certificate of Service)(Muche, Clint) |
| 12/13/2024 | 25 | SECOND SCREENING ORDER signed by Judge J P Stadtmueller on 12/13/2024. IT IS ORDERED that the dates and deadlines set forth in the scheduling order entered November 4, 2024, ECF No. 22 , stand, including the deadline by which to identify the John Doe Officers. (cc: all counsel and mailed to pro se party)(rcm) |
| 01/08/2025 | 26 | DISCOVERY DOCUMENTS *Plaintiff's Answers to Defendants' Written Discovery Requests* by Ryan P O'Boyle. (Attachments: # 1 Attachments, # 2 Cover Letter, # 3 Envelope)(mew) |
| 01/08/2025 | 27 | NOTICE Regarding Discovery mailed to plaintiff. (mew) |
| 01/10/2025 | 28 | MOTION for Summary Judgment, MOTION to Amend Caption to Include Names of Doe Defendants, and RESPONSE to 24 Answer by Ryan P O'Boyle. (Attachments: # 1 Cover Letter, # 2 Envelope)(rcm) (Entered: 01/13/2025) |
| 01/15/2025 | 29 | ORDER signed by Judge J P Stadtmueller on 1/15/2025. 28 Plaintiff's Motion for Summary Judgment is DENIED without prejudice. 28 Plaintiff's Motion to Amend is GRANTED as to updating the case caption. Clerk of Court is DIRECTED to replace the "John Doe Defendants" with Nash Dathe, Juan Garcia, Nathan Locicero, and Alan Carsky on the docket. USMS to SERVE a copy of 23 Amended Complaint and this Order on those Defendants, who shall FILE a responsive pleading. Motions to dismiss must comply with specified requirements. See Order. (cc: all counsel, via mail to Ryan P O'Boyle at Milwaukee Secure Detention Facility)(jm) |
| 01/16/2025 | 30 | TRANSMIT 29 Order, 23 Amended Complaint, Notice, Waiver, and Consent to US Marshal for service upon Defendants Nash Dathe, Juan Garcia, Nathan Locicero, and |

| | | |
|---|---|---|
| | | Alan Carsky. (mew) |
| 01/17/2025 | 31 | LETTER from Assistant City Attorney Clint B. Muche *re: Juan Garcia*. (Muche, Clint) |
| 01/28/2025 | 32 | NOTICE of Appearance by Clint B Muche on behalf of Nash Dathe, Nathan Locicero, Alan Carsky. Attorney(s) appearing: CLINT B. MUCHE (Muche, Clint) |
| 01/28/2025 | 33 | WAIVER OF SERVICE Returned Executed by Nathan Locicero − Waiver sent on 1/16/2025. (Muche, Clint) |
| 01/28/2025 | 34 | WAIVER OF SERVICE Returned Executed by Alan Carsky − Waiver sent on 1/16/2025. (Muche, Clint) |
| 01/28/2025 | 35 | WAIVER OF SERVICE Returned Executed by Nash Dathe − Waiver sent on 1/16/2025. (Muche, Clint) |
| 01/28/2025 | 36 | Magistrate Judge Jurisdiction Form filed by Alan Carsky. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Muche, Clint) |
| 01/28/2025 | 37 | Magistrate Judge Jurisdiction Form filed by Nash Dathe. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Muche, Clint) |
| 01/28/2025 | 38 | Magistrate Judge Jurisdiction Form filed by Nathan Locicero. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Muche, Clint) |
| 02/11/2025 | 39 | US Marshal 285 Form as to Nathan Locicero, Alan Carsky, Nash Dathe − Waivers of Service filed 1/28/2025 (rcm) |
| 02/11/2025 | 40 | Waiver of Service Returned Unexecuted as to Juan Garcia. (rcm) |
| 02/18/2025 | 41 | LETTER from DUSM Enos re service attempts on Juan Garcia. (rcm) |
| 02/18/2025 | 42 | STRICKEN pursuant to 43 Order. ~~PROPOSED Second AMENDED COMPLAINT against Nash Dathe, Juan Garcia, Nathan Locicero, Kristopher Maduscha, Ana Romero−Perez, Mark Sheremeta, Shawn Humitz filed by Ryan P O'Boyle. (Attachments: # 1 Cover Letter, # 2 Envelope)(rcm) Modified on 2/25/2025 (rcm).~~ Modified on 2/28/2025 (jm). (Entered: 02/19/2025) |
| 02/19/2025 | | Party Termed in Error ~~Party Alan Carsky terminated.~~ (rcm) Modified on 2/25/2025 (rcm). |
| 02/28/2025 | 43 | ORDER signed by Judge J P Stadtmueller on 2/28/2025. 42 Plaintiff's Proposed Second Amended Complaint is STRICKEN; 23 Plaintiff's Amended Complaint and 25 Court's Screening Order remain operative; Clerk of Court is DIRECTED to reinstate Alan Carsky and terminate Shawn Humitz as Defendants. Plaintiff may seek LEAVE to file a second amended complaint as specified by 3/21/2025. Plaintiff's deadline to effectuate service of process by USMS as to Defendant Juan Garcia is EXTENDED to 4/21/2025. 22 Scheduling Order is AMENDED as follows: Discovery to now be completed by 5/2/2025; Interim Settlement Report now due by 5/23/2025; Summary Judgments Motions now due by 6/6/2025. See Order. (cc: all counsel, via mail to Ryan P O'Boyle at Milwaukee Secure Detention Facility)(jm) |
| 03/06/2025 | 44 | ANSWER to 23 Amended Complaint with Jury Demand *and Affirmative Defenses* by Nash Dathe, Nathan Locicero, Alan Carsky. (Attachments: # 1 Certificate of Service)(Muche, Clint) |

| | | |
|---|---|---|
| 03/17/2025 | 45 | MOTION for Leave to File Amended Complaint by Ryan P O'Boyle. (Attachments: # 1 Cover Letter, # 2 Proposed Amended Complaint, # 3 Envelope)(rcm) (Entered: 03/18/2025) |
| 03/26/2025 | 46 | ORDER signed by Judge J P Stadtmueller on 3/26/2025. 45 Plaintiff's Motion for Leave to File Second Amended Complaint is GRANTED. The Clerk of Court is DIRECTED to docket the proposed second amended complaint (ECF No. 45−2) as the operative complaint in this matter; and to substitute Shawn Humitz as a defendant and terminate Alan Carsky on the docket. USMS to SERVE a copy of the Second Amended Complaint and this Order on Defendant Shawn Humitz. Defendants to FILE a responsive pleading to the Second Amended Complaint. See Order. (cc: all counsel, via mail to Ryan P O'Boyle at Milwaukee Secure Detention Facility)(jm) |
| 03/27/2025 | 47 | SECOND AMENDED COMPLAINT against Nash Dathe, Juan Garcia, Shawn Humitz, Nathan Locicero, Kristopher Maduscha, Ana Romero−Perez, Mark Sheremeta filed by Ryan P O'Boyle.(bx) |
| 03/27/2025 | 48 | TRANSMIT Order, Second Amended Complaint, Notice, Waiver and Consent forms to USMarshals for service upon defendant: Shawn Humitz (bx) |
| 04/08/2025 | 49 | ANSWER to 47 Amended Complaint with Jury Demand *AND AFFIRMATIVE DEFENSES* by Shawn Humitz, Nash Dathe, Mark Sheremeta, Ana Romero−Perez, Kristopher Maduscha, Nathan Locicero.(Muche, Clint) |
| 04/10/2025 | 50 | NOTICE of Appearance by Clint B Muche on behalf of Shawn Humitz, Nash Dathe, Mark Sheremeta, Ana Romero−Perez, Kristopher Maduscha, Nathan Locicero. Attorney(s) appearing: CLINT B. MUCHE (Muche, Clint) |
| 04/10/2025 | 51 | Magistrate Judge Jurisdiction Form filed by Shawn Humitz, Nash Dathe, Mark Sheremeta, Ana Romero−Perez, Kristopher Maduscha, Nathan Locicero. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Muche, Clint) |
| 04/10/2025 | 52 | WAIVER OF SERVICE Returned Executed by Shawn Humitz − Waiver sent on 3/27/2025. (Muche, Clint) |
| 04/28/2025 | 53 | ORDER signed by Judge J P Stadtmueller on 4/28/2025. By 5/5/2025, Plaintiff to FILE proof of service as to Defendant Juan Garcia; failure to timely do so will result in the dismissal of this defendant from this action. The Court's Scheduling Order is AMENDED as follows: Discovery is now to be completed by 6/13/2025, Interim Settlement Report is now due by 6/27/2025; and Summary Judgment motions are now due by 7/11/2025. (cc: all counsel, via mail to Ryan P O'Boyle at Milwaukee Secure Detention Facility)(jm) |
| 04/29/2025 | 54 | US Marshal 285 Form as to Shawn Humitz − Waiver of Service filed 4/10/2025 (rcm) |
| 05/05/2025 | 55 | MOTION for Extension of Time and Notice of Change of Address by Ryan P O'Boyle. (Address updated to Racine Correctional Institution) (Attachments: # 1 Exhibits, # 2 Envelope)(rcm) (Entered: 05/06/2025) |
| 05/07/2025 | 56 | ORDER signed by Judge J P Stadtmueller on 5/7/2025. 55 Plaintiff's Motion for Extension of Time is GRANTED. By 5/23/2025, Plaintiff to FILE proof of service as to Defendant Juan Garcia; failure to timely do so will result in dismissal of this defendant from this action. The Court' Scheduling Order if further AMENDED as follows: Discovery is now to be completed by 7/11/2025; Interim Settlement Report is now due by 7/25/2025; and Summary Judgment Motions are now due by 8/15/2025. |

| | | |
|---|---|---|
| | | (cc: all counsel, via mail to Ryan P O'Boyle at Racine Correctional Institution)(jm) |
| 05/21/2025 | 57 | LETTER/MOTION for Extension of Time to Serve Defendant Garcia by Ryan P O'Boyle. (Attachments: # 1 Envelope)(rcm) |
| 05/30/2025 | 58 | ORDER signed by Judge J P Stadtmueller on 5/30/2025. 57 Plaintiff's Motion for Extension of Time is GRANTED. Plaintiff to FILE proof of service as to Defendant Juan Garcia by 6/30/2025; no further extension will be granted; failure to timely serve will result in the dismissal of this defendant from this action. The Court's Scheduling Order is AMENDED as follows: Discovery is now to be completed by 8/15/2025; Interim Settlement Report is now due by 8/22/2025; and Summary Judgment Motions are now due by 9/12/2025. (cc: all counsel, via mail to Ryan P O'Boyle at Racine Correctional Institution)(jm) |
| 07/03/2025 | 59 | LETTER from Ryan O'Boyle re identifying Defendant Garcia. (rcm) (Entered: 07/07/2025) |
| 07/07/2025 | 60 | LETTER from ATTORNEY CLINT B. MUCHE *RE: DEFENDANT JUAN GARCIA.* (Muche, Clint) |
| 07/08/2025 | 61 | ORDER signed by Judge J P Stadtmueller on 7/8/2025. IT IS ORDERED that Juan Garcia be and the same is hereby DISMISSED without prejudice as a defendant from this action. (cc: all counsel and mailed to pro se party)(rcm) |
| 07/23/2025 | 62 | MOTION for Default Judgment by Ryan P O'Boyle. (Attachments: # 1 Second Notice for Default Judgment)(bx) |
| 07/23/2025 | 63 | AFFIDAVIT in Support filed by Ryan P O'Boyle re 62 MOTION for Default Judgment. (Attachments: # 1 Exhibit List, # 2 Exhibits, # 3 Envelope)(bx) |
| 07/29/2025 | 64 | LETTER from DEFENDANTS (EXECUTIVE SUMMARY) . (Attachments: # 1 Counsel's Letter Re: Executive Summary, # 2 Ex A − Counsel's May Letter to Plaintiff, # 3 Ex B − Counsel's June Letter to Plaintiff, # 4 Ex C − Counsel's July Letter to Plaintiff, # 5 Plaintiff's Proposed Executive Summary)This document and/or certain attachments are restricted to case participants and attorneys of record should use their efiling login and password to view this document(Muche, Clint) |
| 07/30/2025 | 65 | CERTIFICATE OF SERVICE by All Defendants *enclosing Defendants' Executive Summary Letter with Exhibits* (Muche, Clint) |
| 08/04/2025 | 66 | DECLARATION of Ryan P. O'Boyle (Attachments: # 1 Cover Letter, # 2 Exhibits, # 3 Envelope)(asc) |
| 08/05/2025 | 67 | BRIEF in Opposition filed by Nash Dathe, Shawn Humitz, Nathan Locicero, Kristopher Maduscha, Ana Romero−Perez, Mark Sheremeta re 62 MOTION for Default Judgment . (Muche, Clint) |
| 08/05/2025 | 68 | DECLARATION of CLINT B. MUCHE (Attachments: # 1 Ex. 1 − Defendants' Response to P's 1st Discovery Set, # 2 Ex. 2 − Defendants' Response to P's 2nd Set, # 3 Ex. 3 − Defendants' Response to P's 3rd and 4th Set, # 4 Ex. 4 − O'Boyle Deposition)(Muche, Clint) |
| 08/11/2025 | 69 | ORDER signed by Judge J P Stadtmueller on 8/11/2025. IT IS ORDERED that Plaintiff Ryan P. OBoyle's motion for default judgment, ECF No. 62 , be and the same is hereby DENIED; and IT IS FURTHER ORDERED that the parties shall FILE their motions for summary judgment in accordance with the Courts summary |

| | | |
|---|---|---|
| | | judgment protocols by the previously set deadline of September 12, 2025. (cc: all counsel and mailed to pro se party)(rcm) |
| 08/18/2025 | 70 | Interim Settlement Report from CLINT B. MUCHE . (Attachments: # 1 Certificate of Service)This document and/or certain attachments are restricted to case participants and attorneys of record should use their efiling login and password to view this document(Muche, Clint) |
| 08/18/2025 | 71 | MOTION for Summary Judgment by Ryan P O'Boyle. (Attachments: # 1 Cover Letter, # 2 Envelope)(asc) |
| 08/18/2025 | 72 | AFFIDAVIT of Ryan P. O'Boyle. (asc) |
| 08/27/2025 | 73 | ORDER signed by Judge J P Stadtmueller on 8/27/2025 DENYING without prejudice 71 Plaintiff's Motion for Summary Judgment. (cc: all counsel, via mail to Ryan P O'Boyle at Racine Correctional Institution)(jm) |
| 09/08/2025 | 74 | AFFIDAVIT of Kathleen A O'Boyle. (Attachments: # 1 Cover Letter, # 2 Envelope)(rcm) |
| 09/10/2025 | 75 | MOTION for Extension of Time by Nash Dathe, Shawn Humitz, Nathan Locicero, Kristopher Maduscha, Ana Romero−Perez, Mark Sheremeta. (Attachments: # 1 Certificate of Service)(Muche, Clint) |
| 09/10/2025 | 76 | LETTER from Clint B. Muche *re: ECF No. 75* . (Muche, Clint) Modified on 9/11/2025 (rcm). |
| 09/11/2025 | 77 | DECLARATION of CLINT B. MUCHE *IN SUPPORT OF MOTION TO EXTEND THE TIME FOR FILING DISPOSITVE MOTIONS* (Attachments: # 1 Ex 1 − Brozak Email, # 2 Ex 2 − O'Boyle Letter)(Muche, Clint) |
| 09/15/2025 | 78 | ORDER signed by Judge J P Stadtmueller on 9/15/2025. 75 Defendants' Motion for Extension of Time is GRANTED; dispositive motions are now due by 10/3/2025. (cc: all counsel, via mail to Ryan P O'Boyle at Racine Correctional Institution)(jm) |
| 09/15/2025 | 79 | MOTION for Extension of Time by Ryan P O'Boyle. (Attachments: # 1 Envelope)(rcm) (Entered: 09/16/2025) |
| 09/17/2025 | | TEXT ONLY ORDER signed by Judge J.P. Stadtmueller on 9/17/2025. Upon consideration of the Plaintiff's motion 79 for a brief extension of the deadline to file any dispositive motions along with the documents relevant thereto, the motion is granted, as it is unopposed. The same shall be extended to November 1, 2025. No further extensions shall be granted. (cc: all counsel, via mail to Plaintiff) (njt). |
| 10/29/2025 | 80 | MOTION for Summary Judgment by Nash Dathe, Shawn Humitz, Nathan Locicero, Kristopher Maduscha, Ana Romero−Perez, Mark Sheremeta. (Muche, Clint) |
| 10/29/2025 | 81 | Joint Proposed Findings of Fact by All Defendants. (Muche, Clint) |
| 10/29/2025 | 82 | STATEMENT OF FACT by All Defendants *DISPUTED FACTS*. (Muche, Clint) |
| 10/29/2025 | 83 | Proposed Jury Instructions by All Defendants. (Muche, Clint) |
| 10/29/2025 | 84 | DECLARATION of JIM OWCZARSKI *IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* (Muche, Clint) |
| 10/29/2025 | 85 | DECLARATION of CLINT B. MUCHE *IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* (Attachments: # 1 Ex 1 − Revocation |

| | | |
|---|---|---|
| | | Hearing Request, # 2 Ex 2 − Revocation Summary, # 3 Ex 3 − Rules of Supervision, # 4 Ex 4 − Violation Summary, # 5 Ex 5 − Order to Detain, # 6 Ex 6 − Arrest Detention Report, # 7 Ex 7 − Probable Cause Statement, # 8 Ex 8 − Revocation Decision, # 9 Ex 9 − Decision on Appeal, # 10 Ex 10 − Revocation Order and Warrant, # 11 Ex 11 − CAD Sheet, # 12 Ex 12 − DOC Hold, # 13 Ex 13 − Photos, # 14 Ex 14 − Incident Report, # 15 Ex 15 − Sheremeta BWC, # 16 Ex 16 − Romero−Perez BWC, # 17 Ex 17 − Sheremeta BWC #2, # 18 Ex 18 − Romero−Perez BWC #2, # 19 Ex 19 − Dathe BWC, # 20 Ex 20 − Locicero BWC, # 21 Ex 21 − Custodial Interview, # 22 Ex 22 − Romero−Perez BWC #3, # 23 Ex 23 − SOP 220, # 24 Ex 24 − Perez v. Walters)(Muche, Clint) |
| 10/29/2025 | 86 | CERTIFICATE OF SERVICE by Nash Dathe, Shawn Humitz, Nathan Locicero, Kristopher Maduscha, Ana Romero−Perez, Mark Sheremeta (Muche, Clint) |
| 10/29/2025 | 87 | BRIEF in Support filed by Nash Dathe, Shawn Humitz, Nathan Locicero, Kristopher Maduscha, Ana Romero−Perez, Mark Sheremeta re 80 MOTION for Summary Judgment . (Muche, Clint) |
| 10/29/2025 | 88 | LETTER from Attorney Muche transmitting flash drive with exhibits 15−22. (Attachments: # 1 Envelope)(rcm) (Entered: 10/30/2025) |
| 10/30/2025 | | Exhibits 15−22 to 85 Declaration (NOT AVAILABLE ON PACER; Exhibits contained on flash drive stored in clerk's office; exhibits are electronically stored ) (rcm) |
| 11/04/2025 | 89 | MOTION for Summary Judgment by Ryan P O'Boyle. (Attachments: # 1 Cover Letter, # 2 Exhibits, # 3 Envelope)(rcm) |
| 11/04/2025 | 90 | AFFIDAVIT of Ryan P O'Boyle. (rcm) |
| 11/05/2025 | 91 | LETTER from Ryan O'Boyle re statements of fact. (Attachments: # 1 Envelope)(rcm) |
| 11/13/2025 | 92 | Proposed Jury Instructions by Ryan P O'Boyle. (Attachments: # 1 Exhibits, # 2 Cover Letter, # 3 Envelope)(rcm) (Entered: 11/14/2025) |
| 11/21/2025 | 93 | BRIEF in Opposition filed by Nash Dathe, Shawn Humitz, Nathan Locicero, Kristopher Maduscha, Ana Romero−Perez, Mark Sheremeta re 89 MOTION for Summary Judgment . (Attachments: # 1 Certificate of Service)(Muche, Clint) |
| 12/09/2025 | 94 | LETTER from Ryan O'Boyle to Attorney Muche. (Attachments: # 1 Cover Letter, # 2 Envelope)(rcm) (Entered: 12/10/2025) |
| 12/09/2025 | 95 | LETTER from Ryan O'Boyle to Judge Stadtmueller. (rcm) (Entered: 12/10/2025) |
| 12/19/2025 | 96 | LETTER from ATTORNEY CLINT B. MUCHE in response to 95 Letter . (Muche, Clint) Modified on 12/22/2025 (rcm). |
| 01/20/2026 | 97 | NOTICE of Change of Address as to Ryan P O'Boyle − Address updated to 4715 W Howard Ave Greenfield WI 53220 (Attachments: # 1 Envelope)(rcm) (Entered: 01/21/2026) |
| 08/31/2026 | 98 | ORDER signed by Judge J P Stadtmueller on 8/31/2026. 80 Defendants' Motion for Summary Judgment is GRANTED in part. Plaintiff's federal law claims are DISMISSED with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are DISMISSED without prejudice. 89 Plaintiff's Motion for Summary Judgment is DENIED. CASE DISMISSED. See Order. (cc: all counsel, via mail to Ryan P O'Boyle)(jm) |

| | | |
|---|---|---|
| 08/31/2026 | 99 | JUDGMENT signed by Deputy Clerk and approved as to form by Judge J P Stadtmueller on 8/31/2026. Action DISMISSED. (cc: all counsel, via mail to Ryan P O'Boyle)(jm) |
| 10/01/2026 | 100 | NOTICE OF APPEAL by Ryan P O'Boyle from USDC re: 98 Order on Motion for Summary Judgment, 99 Judgment. (cc: all counsel)Newlin Notice to be sent by 11/30/2026 (Attachments: # 1 Cover Letter, # 2 Envelope, # 3 Certificate of Service)(bx) |
| 10/01/2026 | 101 | Docketing Statement by Ryan P O'Boyle re 100 Notice of Appeal Prisoner, (cc: all counsel) (bx) |
| 10/01/2026 | 102 | MOTION for Leave to Appeal Without Prepayment of the Filing Fee by Ryan P O'Boyle. (Attachments: # 1 IFP on Appeal Form)(bx) |
| 10/01/2026 | 103 | STATEMENT OF ISSUES RECEIVED from Ryan P O'Boyle in support of 100 Notice of Appeal. (bx) |
| 10/01/2026 | 104 | DOCUMENTS RECEIVED − Seventh Circuit Transcript Information Sheet from Ryan P O'Boyle. (bx) |
| 10/02/2026 | 105 | Pro Se Cover Letter re: 100 Notice of Appeal Prisoner, (Attachments: # 1 Docket Sheet)(bx) |

United States District Court
Eastern District of Wisconsin
Milwaukee Division

U.S. District Court
Wisconsin Eastern
OCT 01 2026
FILED
Clerk of Court

Ryan P. O'Boyle,
Plaintiff,

v.

Case No. 2:24-CV-00895-JPS

Mark Sheremeta, Ana Romero-Perez,
Khristopher Maduscha, Nash Dathe,
Juan Garcia, Nathan Locicero, Shawn Humitz,
Defendants.

---

**NOTICE OF APPEAL**

---

Notice is hereby given that Ryan P. O'Boyle, Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the final Order and Judgment granting Defendants' Motion for Summary Judgment and dismissing the Plaintiff's claims, entered in this action on August 31, 2026.

Dated: September 25, 2026.

Respectfully submitted,

[signature]

Ryan P. O'Boyle, Pro Se

4715 W. Howard Ave.
Greenfield, WI 53220

JPS

U.S. District Court
Wisconsin Eastern
OCT 01 2026
FILED
Clerk of Court

25 September 2026

Ryan P. O'Boyle
4715 W. Howard Avenue
Greenfield, WI 53220

Clerk of Court
United States District Court
Eastern District of Wisconsin
Federal Building & U.S. Courthouse, Room 362
517 E. Wisconsin Avenue
Milwaukee, WI 53202

RE: Ryan P. O'Boyle v. Mark Sheremeta, et al. ***Case No. 2:24-CV-00895-JPS***

Dear Clerk of Court:

Enclosed for filing in the above-referenced matter, please find the original copies of the following documents:

1. Notice of Appeal
2. Appellant's Docketing Statement
3. Plaintiff's Motion for Leave to Proceed on Appeal In Forma Pauperis
4. Seventh Circuit Transcript Information Sheet
5. Certificate of Service

Please docket these materials accordingly to initiate the appellate process with the United States Court of Appeals for the Seventh Circuit.

Thank you for your time and assistance with this matter.

Respectfully submitted,

Ryan P. O'Boyle

Ryan P. O'Boyle
Plaintiff - Appellant, Pro Se

Ryan P. Oboyle
4715 W Howard Ave
Greenfield, WI 53220-2111

Retail

UNITED STATES POSTAL SERVICE®

RDC 99

53202

U.S. POSTAGE PAID
FCM LG ENV
MILWAUKEE, WI 53220
SEP 28, 2026

$1.98

S2325A500122-34

United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Ave., Room 362
Milwaukee, WI 53202

U.S. District Court
Wisconsin Eastern
OCT 01 2026
FILED
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

RYAN P. O'BOYLE,
Plaintiff – Appellant,

v. Case No. 2:24-CV-00895-JPS

MARK SHEREMETA, ANA ROMERO-PEREZ,
KHRISTOPHER MADUSCHA, NASH DATHE,
JUAN GARCIA, NATHAN LOCICERO,
SHAWN HUMITZ,
Defendants – Appellees.

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on this 25th day of September, 2026, a true and correct copy of the foregoing documents (Notice of Appeal, Appellant's Docketing Statement, Plaintiff's Motion for Leave to Proceed on Appeal In Forma Pauperis, and Seventh Circuit Transcript Information Sheet) was served upon the following counsel of record by placing the same in the United States Mail, first-class postage prepaid, addressed as follows:

Clint B. Muche
Assistant City Attorney
Office of the City Attorney, Suite 800
200 E. Wells Street
Milwaukee, WI 53202-3551
Counsel for Defendants – Appellees

Dated this 25th day of September, 2026.

Respectfully submitted,

Ryan P. O'Boyle
Plaintiff - Appellant, Pro Se

U.S. District Court
Wisconsin Eastern
OCT 01 2026
FILED
Clerk of Court

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

Ryan P. O'Boyle,
Plaintiff-Appellant,

v.

District Court No. 2:24-cv-00895-JPS
Appellate Court No.__________ (To be assigned by Clerk

Mark Sheremeta, et al.,
Defendants-Appellees.

---

**APPELLANT'S DOCKETING STATEMENT**

---

Pursuant to Circuit Rule 3(c), Plaintiff-Appellant Ryan P. O'Boyle, proceeding pro se, submits this Docketing Statement:

1. DISTRICT COURT JURISDICTION:

The District Court had subject-matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, and supplemental jurisdiction.

2. APPELLATE COURT JURISDICTION;

The United States Court of Appeals for the Seventh Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, because this appeal is taken from a final judgment of the District Court that disposes of all claims with respect to all parties.

i. The order being appealed is the District Court's Decision and Order granting summary judgment to the Defendants, entered on August 31, 2026.

ii. This Docketing Statement is filed concurrently with the Notice of Appeal on September 25, 2026, within the 30-day time limit prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A).

3. PRIOR OR RELATED PROCEEDINGS:

There are no prior or related proceedings in this or any other appellate court regarding this matter.

Dated: September 25, 2026.

Respectfully submitted,

Ryan P. O'Boyle

Ryan P. O'Boyle, Pro Se
4715 W. Howard Avenue
Greenfield, WI 53220

U.S. District Court
Wisconsin Eastern
OCT 01 2026
FILED
Clerk of Court

## STATEMENT OF ISSUES

1. Whether the District Court erred in granting summary judgment and qualified immunity to Defendants by ruling that Wisconsin Act 79 operates as a total, blanket exception to the Fourth Amendment warrant requirement, allowing municipal officers to physically invade an extended supervision participant's home and private curtilage without a warrant or exigent circumstances, in direct violation of the bright-line constitutional thresholds established in ***Payton v. New York***, 445 U.S. 573 (1980) and ***United States v. Banks***, 60 F.4th 386 (7th Cir. 2023).

2. Whether the District Court committed reversible error by finding that Defendants possessed objective "probable cause" or "reasonable suspicion" to execute a warrantless home entry and perimeter siege, where Defendants' sole source of information was an intensely intoxicated, medically impaired witness whose changing allegations directly defied physical biomechanics, lacked a single matching physical injury, and who explicitly admitted on body-worn camera that she had never personally observed any weapons [See: **Amended Complaint**; **Sheremeta BWC 1** and **2**].

3. Whether a pretrial detention violates the Fourth Amendment under ***Manuel v. City of Joliet***, 580 U.S. 357 (2017) when the uncontradicted physical record establishes that the core fabric of law enforcement authority was predicated on an officer's false, back-dated statements, specifically where Officer Sheremeta swore under penalty of perjury that an administrative probation hold was acquired prior to changing locations, when official police business logs establish the physical gunpoint arrest occurred at 2:15 a.m. and the administrative hold was not requested until 3:06 a.m [***Exhibit 4***, pp. 2–3 or ***Doc. 98, Exhibit 4***].

4. Whether the District Court committed a severe abuse of discretion by transforming itself into a trier of fact at the summary judgment stage by explicitly noting the complete absence of physical injuries to corroborate a violent assault allegation, yet choosing to resolve weighty credibility inferences and deeply flawed factual contradictions in favor of the moving defendants rather than submitting the question of objective probable cause to a jury under ***Gonzalez v. City of Elgin***, 578 F.3d 526, 537 (7th Cir. 2009) [***Amended Complaint***; ***Plaintiff's Motion for Summary Judgment***; ***Plaintiff's Affidavit in Support of Summary Judgment***].

5. Whether the District Court erred as a matter of law by holding that Milwaukee Police officers acted with lawful extra-jurisdictional arrest authority under ***Wis. Stat. § 175.40***, where the defendants explicitly admitted in the ***Joint Statement of Undisputed Facts*** that they flagrantly violated the mandatory statutory preconditions of ***§ 175.40(5)(b)*** by completely failing to notify or cooperate with the neighboring Greenfield Police Department in direct violation of ***Milwaukee Police Department SOP 220*** and ***SOP 230***, thereby forfeiting their official capacity and acting as mere private citizens under ***State v. Slawek***, 114 Wis. 2d 332 (Ct. App. 1983).

6. Whether the District Court committed a clear, reversible error of fact by falsely declaring that a central, filed piece of discovery evidence—the sworn Milwaukee Police Department "***CR-215 form***"—did not

exist in the record, despite its formal electronic docketing as "***Exhibit 4***" (**MPD-O'BOYLE,R.-000003** and **MPD-O'BOYLE,R.-000004**), thereby fundamentally corrupting the court's summary judgment and qualified immunity analysis [***Exhibit 4***, pp. 2–3 or ***Doc. 98, Exhibit 4***].

7. Whether the District Court violated Plaintiff's procedural due process rights and abused its discretion by refusing to consider his timely motion for leave to supplement, after the Defendants introduced an un-notified, retroactive ***Act 79*** statutory defense at the absolute deadline of the summary judgment stage; and where the District Court falsely claimed Plaintiff's position was "unsubstantiated," completely ignoring that Plaintiff had explicitly anticipated and foreclosed the ***Act 79*** subterfuge defense under oath in Paragraph 12 of his verified ***Amended Complaint*** at the very onset of the litigation [***Amended Complaint***; ***Document 98, Case 2:24-cv-00895-JPS***].

U.S. District Court
Wisconsin Eastern
OCT 0 1 2026
FILED
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

Ryan P. O'Boyle,
Plaintiff – Appellant,

v.

Case No. 2:24-CV-00895-JPS

Mark Sheremeta, et al.,
Defendants - Appellees.

---

**SEVENTH CIRCUIT TRANSCRIPT INFORMATION SHEET**
(Fed. R. App. P. 10(b) / Circuit Rule 10)

---

PART I - APPELLANT'S DECLARATION

Plaintiff-Appellant Ryan P. O'Boyle, proceeding pro se, hereby complies with the transcript notification requirements of Federal Rule of Appellate Procedure 10(b)(1).

1. TRANSCRIPT STATUS: [ X ] NO TRANSCRIPTS ARE BEING ORDERED.
No oral argument or evidentiary hearing transcripts are requested for transcription because all relevant transcripts necessary for the disposition of this appeal are already on file with the Clerk of the District Court.

2. IDENTIFICATION OF TRANSCRIPTS ON FILE:
The following deposition transcripts were previously filed in the District Court record by the Defendants and are fully incorporated into the Record on Appeal:

- Deposition Transcript of Ryan P. O'Boyle – Taken on February 14, 2025.
- Deposition Transcript of Ryan P. O'Boyle – Taken on March 28, 2025.

3. APPELLANT INFORMATION:
Name: Ryan P. O'Boyle, Pro Se
Address: 4715 W. Howard Avenue, Greenfield, WI 53220
Phone: (317)612-1849

Dated this 25th day of September, 2026.
Respectfully submitted,

Ryan P. O'Boyle
Plaintiff - Appellant, Pro Se

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RYAN P. O'BOYLE,<br><br>Plaintiff,<br><br>v.<br><br>MARK SHEREMETA, ANA ROMERO-PEREZ, KRISTOPHER MADUSCHA, NASH DATHE, NATHAN LOCICERO, and SHAWN HUMITZ,<br><br>Defendants. | Case No. 24-CV-895-JPS<br><br>**ORDER** |

## 1. INTRODUCTION

In July 2024, Plaintiff Ryan P. O'Boyle ("O'Boyle") sued Defendants Mark Sheremeta ("Sheremeta"), Ana Romero-Perez ("Romero-Perez"), Kristopher Maduscha ("Maduscha"), Nash Dathe ("Dathe"), Nathan Locicero ("Locicero"), and Shawn Humitz ("Humitz") (together, "Defendants"), members of the Milwaukee Police Department ("MPD"), for monetary damages pursuant to 42 U.S.C. § 1983 based on various alleged constitutional violations surrounding his arrest in November 2022, as well as two state law claims. Although the docket reflects pending cross-motions for summary judgment, ECF Nos. 80 and 89, because O'Boyle is proceeding pro se and did not file an opposition brief to Defendants' motion for summary judgment, the Court will construe O'Boyle's motion for summary judgment as his opposition brief to the Defendants' motion. The Court does so to O'Boyle's benefit, because construing his filing as an opposition brief requires the Court to draw all reasonable inferences in

O'Boyle's favor as the nonmoving party. *See infra* Section 2. Even when doing so, the Court finds no genuine issues of material fact that would enable any of O'Boyle's federal law claims to proceed to trial. The Court will thus grant Defendants' motion for summary judgment in part, to the extent it concerns the federal law claims, which will be dismissed with prejudice. Given the dismissal of all federal law claims, the Court declines to exercise supplemental jurisdiction over O'Boyle's remaining state law claims, which will be dismissed without prejudice. With all claims addressed, this case will be dismissed.[1]

**2. LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (citing FED. R. CIV. P. 56(a) and *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 98 (7th Cir. 2014)). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*,

[1]Although the Court has construed O'Boyle's filing as an opposition brief, the submission was docketed as a motion for summary judgment based on the manner in which O'Boyle entitled it. Given the disposition of O'Boyle's claims as described, the Court will deny O'Boyle's filing at ECF No. 89 to dispose of the "motion."

815 F.3d 356, 360 (7th Cir. 2016) (citing *Burritt v. Ditlefsen*, 807 F.3d 239, 248 (7th Cir. 2015)).

> At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party.

*Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that h[is] case is convincing, []he need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994) (collecting cases). But simply "denying a fact that has evidentiary support 'does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment.'" *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (quoting *Roberts v. Advocate Health Care*, 119 F. Supp. 3d 852, 854 (N.D. Ill. 2015)).

## 3. FACTS[2]

### 3.1 Procedural Background

O'Boyle is an adult resident of the State of Wisconsin. ECF No. 81 at 1. In 2012, O'Boyle was convicted of Second-Degree Intentional Homicide (Attempt). *State of Wisconsin v. Ryan Paul O'Boyle*, Case No. 2011CF3261

[2]The facts in this section are drawn largely from the parties' joint statements of undisputed facts. ECF No. 81. Some facts from the joint statement are omitted as immaterial. Internal citations from the joint statement of facts are omitted in this section, except where helpful to provide additional context. The Court also cites to facts from other portions of the record as necessary, including body camera footage provided to the Court by Defendants, and notes any disputes as relevant.

(Milwaukee Cnty. Cir. Ct. 2011), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2011CF003261&countyNo=40&mode=details (last visited Aug. 31, 2026) ("State Case"). He was sentenced to state prison for 8 years, followed by 5 years of extended supervision. *Id.*, Sept. 28, 2012 docket entry. His extended supervision took place "by and within the custody and control of the Wisconsin Department of Corrections" ("DOC"). ECF No. 81 at 1 (citing WIS. STAT. § 302.113(8m)(a)). At the time of the events giving rise to this lawsuit, O'Boyle was serving the extended supervision portion of that sentence. *Id*. at 1–2. However, following his arrest on November 24, 2022, O'Boyle's term of extended supervision was revoked. *Id.* at 2. On April 24, 2023, the state court ordered that he be incarcerated for three years with custody credit from November 24, 2022 through April 24, 2023. *Id*.

In July 2024, O'Boyle commenced this lawsuit. ECF No. 1. O'Boyle's live claims include: (1) Fourth Amendment unlawful seizure/arrest; (2) Fourth Amendment unlawful entry to a residence; (3) excessive force; (4) Fourth Amendment unlawful post-seizure/arrest detention; (5) false imprisonment; and (6) failure to intervene. ECF No. 25 at 8–9; ECF No. 81 at 2. The operative complaint identifies six Milwaukee police officers—Sheremeta, Romero-Perez, Maduscha, Dathe, Locicero, and Humitz—as the alleged wrongdoers. *Id*. at 2–3.

### 3.2 Factual Background

#### 3.2.1 The 911 Call and Subsequent Interaction with the Caller

At 12:46 a.m. on Thursday, November 24, 2022, Milwaukee emergency dispatch received a 911 call alleging that a battery had occurred earlier that night (on November 23, 2022). *Id*. at 4. At 12:55 a.m., Sheremeta

and Romero-Perez were dispatched to an address on 5th Street to meet with the caller (the "Complaining Witness"). *Id*. Both officers were equipped with body-worn cameras and their subsequent conversations with the Complaining Witness were fairly and adequately recorded. *Id*. The Complaining Witness told Sheremeta and Romero-Perez that "she had gone out with O'Boyle earlier that night," "he had left her at the establishment but later returned (at her request) to drive her home," "they had argued in his truck," and that "O'Boyle had tossed or forcibly pushed her out of the truck and driven away but later returned again and drove her home." *Id*. The Complaining Witness further reported to Sheremeta and Romero-Perez that, after O'Boyle shouted at her to get out of his truck and she refused, he put either one or both of his hands on her neck and squeezed, allegedly impeding her breathing. *Id*.

The Complaining Witness provided O'Boyle's contact information and a recent photograph of him to the officers.[3] *Id*. She also reported to officers that O'Boyle was on parole, that he said he had guns in his basement,[4] and that she "was scared for her life." *Id*. at 4–5. Sheremeta took photos of the Complaining Witness's upper chest and neck depicting fresh

---

[3]According to O'Boyle, the Complaining Witness allegedly provided these details within 36 seconds of Sheremeta and Romero-Perez's arrival, and the details sounded well-rehearsed. ECF No. 81 at 4 n.7.

[4]O'Boyle claims the recording reveals that at that time the Complaining Witness also reported she "had never seen and could not describe the guns." *Id*. at 5. Defendants say that the video speaks for itself. *Id*. Based on the Court's review, it is true that the Complaining Witness reported that she had never seen the guns personally. ECF No. 85-15 at 30:55 to 31:30. It is also true, however, that during that same conversation, she reported that O'Boyle had told her that he has two guns in the basement, including a .44, though she could not say what that terminology "means" in terms of whether a .44 referred to a rifle, pistol, or whatever the case may be. *Id*.

red marks and superficial scratches below her clavicle/collarbone area. *Id*. at 5 (citing ECF No. 85-13). Although the Complaining Witness reported that O'Boyle had pushed her from his truck and she fell hard on the concrete, she did not have any visible injury to her hands, arms, head or side. *Id*.

#### 3.2.2 O'Boyle's Arrest

O'Boyle's mother, Kathleen O'Boyle ("Kathleen") owns a single-family residence at 4715 W. Howard Avenue, Greenfield, Wisconsin (hereinafter "4715"). *Id*. at 5. The Complaining Witness informed Sheremeta and Romero-Perez that O'Boyle lived with his mother at 4715. *Id.* at 6. Sheremeta and Romero-Perez went to 4715 to locate O'Boyle around 1:50 a.m. *Id*. at 6. Dathe, Locicero, and Humitz also responded to 4715 to provide backup. *Id*. Each of the Defendants wore body cameras that fairly and accurately recorded their activities on-site. *Id*.

After arriving, Sheremeta saw O'Boyle's truck parked in the driveway behind 4715. *Id.* Sheremeta told Romero-Perez, Dathe, Locicero, and Humitz about O'Boyle's prior conviction and supervision status and that, "supposedly, he'[d] told [the Complaining Witness] . . . that he[] [had] guns in the house." *Id*. (citing same). In reference to whether additional units were or were not still coming, Sheremeta stated his preference for "'an extremely large display of force'" to diminish the likelihood of a standoff." *Id*.

At approximately 2:10 a.m., Sheremeta, Romero-Perez, Dathe, and Locicero (the "Entry Team") approached the front door, knocked several times, and announced themselves as "Milwaukee Police." *Id*. at 6–7. Each officer in the Entry Team wore a body camera that fairly and accurately

recorded their activities on-site. *Id*. at 7 n.12. Humitz was present outside the residence but did not enter. *Id*. at 7. The Entry Team was positioning itself outside the front door, around 2:12 a.m., and Sheremeta told Romero-Perez: "swing that door and come over to the right – hold the door open to the right – hold the door open to the right so you're out of my way – out of my line of fire." *Id*.

At 2:14 a.m. an exterior light came on, and before the door had opened, Sheremeta stated again: "Milwaukee Police." *Id*. Kathleen opened the door and asked, "What's going on?" *Id*. Sheremeta replied, "Hi, is Ryan here?" *Id*. Kathleen replied "[Y]eah, what's going on?" *Id*. Sheremeta then asked, "Can you have him come to the door please[5]?" *Id*. (footnote added). Kathleen then turned back into the house and called out "Ryan?" *Id*. The Entry Team defendants were equipped with firearms and that the video footage produced in this case fairly and accurately depicts how those weapons were held throughout the events depicted. *Id*.

None of the Defendants explicitly asked Kathleen whether she consented to their entry. *Id*. The Entry Team, led by Sheremeta, followed her into the living room where Sheremeta asked for the first time whether O'Boyle had access to firearms inside the house. *Id*. Then, Sheremeta called out "Ryan—Milwaukee Police, come out please!" *Id*. Within seconds, O'Boyle appeared and was taken into custody. *Id*. When O'Boyle came into view, Sheremeta ordered him to turn around, get on his knees, and put his hands on his head. *Id*. O'Boyle complied. *Id*. At approximately 2:15 a.m.,

[5]O'Boyle claims that Sheremeta did not use the word "please" here, ECF No. 81 at 7, but review of the footage reveals that he did. ECF No. 85-17 at 13:10 to 13:15. In any event, this fact is immaterial because no consent was required. *See infra* Sections 4.2 and 4.3.

Locicero and Dathe approached O'Boyle and secured his hands behind his back in handcuffs. *Id*. at 7–8. The parties agree that Sheremeta, Romero-Perez, Dathe, Locicero, and Humitz were inside 4715 when O'Boyle was seized, and that Maduscha was not present at O'Boyle's home. *Id*. at 3.

O'Boyle does not allege any injury resulting from the way in which he was secured, only that the seizure itself was objectively unreasonable, i.e., excessive. *Id*. at 8.

#### 3.2.3 The Events That Followed

At around 2:20 a.m., Officer Locicero loaded O'Boyle into the police car for transport to District 6. *Id*.; *see also* ECF No. 85-19 at 4:45-5:30 and 85-20 at 8:45-10:59. O'Boyle does not claim any physical injury in connection with how he was loaded for transport. ECF No. 81 at 8. O'Boyle was transported to District 6 and removed from the vehicle without incident. *Id*. At 3:06 a.m., Sheremeta contacted O'Boyle's probation officer and requested a "probation warrant," presumably related to O'Boyle's violation of conditions of his supervised release.[6] *Id*. MPD District 6 received a hold from the DOC around 3:07 a.m. *Id*. (internal quotation marks omitted).

O'Boyle was booked; then, shortly after 5 a.m., Sheremeta and Romero-Perez conducted a custodial interview of O'Boyle at District 6. *Id*. O'Boyle's failure-to-intervene claim against Maduscha arises from the interaction he had with Maduscha either immediately before the interview or shortly after when he returned to his cell. *Id*. O'Boyle alleges that he told

[6]While the parties seem to use the terms "probation" and "parole" interchangeably, the Court will use the correct term of "supervised release" where appropriate in this Order. "Formally and practically, Wisconsin's extended-supervision system," which the parties agree O'Boyle was on at the time of the arrest, "is parole by another name." *United States v. Caya*, 956 F.3d 500, 503 (7th Cir. 2020).

Maduscha his arrest was unconstitutional and Maduscha should have released him or caused him to be released. *Id*. at 8–9. O'Boyle agrees that the officers did not force him to speak with them, but states that he was nonetheless compelled to do so because of his status as a person on extended supervision. *Id*. at 9. O'Boyle has remained in custody since his arrest. *Id*. at 9–10.

## 4. ANALYSIS

Defendants move for summary judgment on all six of O'Boyle's claims.[7] ECF No. 80. The Court begins with its probable cause analysis (as it is pertinent to several claims; namely, the unlawful entry, unlawful arrest, and the federal false imprisonment claims). It will then address the merits of O'Boyle's unlawful entry claim, his unlawful arrest claim, his federal false imprisonment claim, and his post-seizure arrest/detention claim. The Court will lastly address O'Boyle's federal failure to intervene claim, before concluding with a discussion of his corresponding state law claims (his false imprisonment and failure to intervene claims under Wisconsin law).

### 4.1 Probable Cause[8]

"An officer has probable cause to arrest 'if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant

---

[7]O'Boyle challenges whether Defendants engaged in good-faith discovery to undermine the evidence Defendants attached on summary judgment. ECF No. 89 at 1. However, at this point, since the Court already analyzed these arguments in a prior order denying default judgment and determined they have no merit, ECF No. 67, the Court has no occasion to address the matter again and will not do so here.

[8]The Court notes that the standard used in the context of Act 79, namely, reasonable suspicion, "is the same [as] in federal court." *United States v. Slater*, No. 21-CR-106-PP-SCD, 2021 WL 7500271, at *8 (E.D. Wis. Oct. 21, 2021), *report and recommendation adopted by* 2022 WL 558097 (E.D. Wis. Feb. 24, 2022) (citing *Navarette v. California*, 572 U.S. 393, 396–97 (2014) and *United States v. Chang*, 999 F.3d 1059,

a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime.'" *Kovacic v. Ruechel*, No. 23-C-642, 2025 WL 2709522, at *5 (E.D. Wis. Sept. 23, 2025) (quoting *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013) and citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The inquiry is a 'purely objective' one and it does not deal in 'hard certainties' but rather 'probabilities.'" *Id.* (quoting *Abbott*, 705 F.3d at 714).

In this case, the parties agree that there was a 911 call by the Complaining Witness herself reporting a battery earlier that night, ECF No. 81 at 4, which is a crime. *See* WIS. STAT. § 940.19(1). Courts "presume the reliability of an emergency 911 call" such as this. *United States v. Hopewell*, 498 F. App'x 609, 611 (7th Cir. 2012) (citing *United States v. Drake*, 456 F.3d 771, 774–75 (7th Cir. 2006) and *United States v. Hampton*, 585 F.3d 1033, 1038–39 (7th Cir. 2009)). That presumption remains intact as long as the call contains "sufficient indicia of reliability." *Gray v. City of Evanston*, No. 23-CV-1931, 2024 WL3495009, at *5 (N.D. Ill. July 22, 2024) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)). When Sheremeta and Romero-Perez followed up on the 911 phone call and met with the Complaining Witness (who the parties agree had gone out with O'Boyle earlier that night, ECF No. 81 at 4) to learn her narrative of events, they saw and took photos showing that "her neck was visibly red and scratched." ECF No. 87 at 13

---

1065–67 (7th Cir. 2021)); *id*. (reciting the reasonable suspicion standard used in Act 79 cases (quoting *State v. Anderson*, 935 N.W.2d 285, ¶ 33 (Wis. 2019)); *see id*. (finding that "totality of the circumstances here demonstrate that the police had reasonable suspicion to believe that Slater had committed, was committing, or was about to commit a crime"). By extension, therefore, the Court sees no reason that the Court could not also borrow the probable cause analysis used in other Fourth Amendment cases, and will accordingly do so here.

(citing ECF No. 81 at 5); *see also* ECF No. 85-13 (photos of Complaining Witness on November 24, 2022). These observations were consistent with her reporting to the 911 dispatcher and later that day to Sheremeta and Romero-Perez that O'Boyle had "put either one or both of his hands on [the Complaining Witness's] neck and squeezed[,] allegedly impeding her breathing." ECF No. 81 at 4 (citing ECF Nos. 85-15 and 85-16).

This evidence refutes O'Boyle's argument that Defendants lacked probable cause here because the Complaining Witness was intoxicated at the time she provided a statement to Sheremeta and Romero-Perez. ECF No. 89 at 2. Because Sheremeta and Romero-Perez's observations (and the photos of those) corroborate the Complaining Witness's firsthand account that O'Boyle committed battery against her, considering the totality of the circumstances, it is apparent that officers had the indicia of reliability they needed to uphold the presumption of reliability from the original 911 call. *See United States v. Orr*, 969 F.3d 732, 736 (7th Cir. 2020) (noting that the "(1) degree of police corroboration; (2) the informant's firsthand knowledge; [and] (3) the detail provided" are factors in deciding an informant's reliability (quoting *United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018))). While the Court appreciates that O'Boyle may be correct in noting that the Complaining Witness has no "cuts, marks, scrapes, bruises or abrasions on her side, head, arms, legs . . . to substantiate her allegations of being pushed from [O'Boyle]'s truck," ECF No. 89 at 2, none of this pertains to whether there was evidence that he had committed a battery (strangulation), which is at the heart of this analysis.[9] *See Hartfield v.*

[9]O'Boyle makes the far-fetched allegation that the DOC operated as "stalking horse" by requesting a probation hold and using a "CR-215 form" to "induce a Judge to find probable cause to cover up their illegal acts." ECF No. 89

*Richardson*, 94 F.3d 647 (Table), 1996 WL 453224, at *1 (7th Cir. Aug. 8, 1996) ("Hatfield provided no reasons, other than his son-in-law's lack of visible injuries and the fact that the charges against him proved to be untenable, why it was not reasonable for defendants to believe the complaint at the time it was made." (quoting *Hebron v. Touhy*, 18 F.3d 421, 422 (7th Cir. 1994)). As such, the Court finds that there was probable cause to believe that O'Boyle had just committed a crime.

Before continuing its analysis, the Court must first note that a warrant was not required for Defendants to arrest O'Boyle inside his home. As the Seventh Circuit has explained elsewhere:

> To assume that the warrant requirement really goes to the matter of arrest rather than the matter of entry . . . is wrong. Because (i) there is no general requirement that arrests be made with a warrant, and (ii) an arrest within premises is no more threatening or humiliating than a street arrest, it should be apparent that . . . it is the otherwise unauthorized entry and not the arrest which gives rise to the warrant requirement.

*Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1245 (7th Cir. 1994) (quoting W. LaFave, 2 SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 6.1 at 584 (2d ed. 1987) (internal quotation marks omitted) and citing

---

at 4–5. This is an unsubstantiated assertion, as O'Boyle provides no evidence to suggest any such intent from the MPD or even the existence of the "CR-215 form" to which he refers. Therefore, the Court considers this argument waived. *Lee v. Chi. Youth Ctrs.*, 69 F. Supp. 3d 885, 888 (N.D. Ill. 2014) ("An argument is waived by failure to properly support and develop in the brief the factual basis essential to its disposition." (citing *Morgan v. S. Bend Cmty. Sch. Corp.*, 797 F.2d 471, 480 (7th Cir. 1986))). And even if O'Boyle had properly developed and substantiated this claim, the "stalking horse theory has no application" in a case like this where Defendants rely on "ordinary Fourth Amendment analysis that considers all the circumstances" of the alleged Fourth Amendment intrusion. *United States v. Price*, 28 F.4th 739, 751–52 (7th Cir. 2022) (citing *United States v. Knights*, 534 U.S. 112, 122 (2001) and *United States v. Sweeney*, 891 F.3d 232, 236 (6th Cir. 2018)).

*United States v. White*, 660 F.2d 1178, 1183 (7th Cir. 1981)); *Milbeck v. George*, 171 F.4th 930, 936 (7th Cir. 2026) ("Physical entry of the home is the chief evil against which . . . the Fourth Amendment is directed,' and 'the warrant procedure minimizes the danger of needless intrusions of that sort.'" (quoting *Payton v. New York*, 445 U.S. 573, 585–86 (1980) (internal brackets omitted))). That is all to say, "[o]nce an officer has lawfully entered the premises . . . the Constitution does not require that he obtain a warrant before affecting an otherwise lawful arrest within." *McClellan*, 37 F.3d at 1245 (collecting authorities); *see also White*, 660 F.2d at 1183 ("In the instant case . . . a magistrate's determination that probable cause for an arrest warrant was lacking (should such a determination have been made) would not have prevented the ultimate intrusion. . . . It [therefore] serves no purpose to require an arrest warrant where the same intrusion would occur whether or not the magistrate issues the warrant."); *see also Poulson v. Commonwealth*, 913 S.E.2d 527, 533 (Va. 2025) (collecting courts that have adopted this interpretation).

In this case, Defendants had a lawful basis for entry into O'Boyle's residence. *See infra* Section 4.2. The Court acknowledges that unlike *McCellan* and the other cases that the *McCellan* court (and the *Poulson* court) collected, this justification does not rest on consent or exigent circumstances. However, that is only because this case involves an individual on extended supervision subject to diminished rights and a state law that enables officers to enter his residence under different parameters than those that apply to those not on extended supervision. *See infra* Section 4.2. As explained in more detail below, those parameters were met, making the Defendants' entry lawful, and because there was probable cause (as

discussed earlier in this Section), Defendants' arrest of O'Boyle was "otherwise lawful." *McClellan*, 37 F.3d at 1245.

### 4.2 Unlawful Entry

"The Supreme Court has stated that 'a fundamental purpose of the Fourth Amendment is to safeguard individuals from unreasonable government invasions of legitimate privacy interests.'" *Bentz v. City of Kendallville*, 577 F.3d 776, 781 (7th Cir. 2009) (quoting *United States v. Chadwick*, 433 U.S. 1, 11 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991)). "Thus, to bring a Fourth Amendment action for an unlawful search (or entry), a plaintiff must have a legitimate expectation of privacy that society recognizes as reasonable." *Id*. at 781–82 (citing *California v. Ciraolo*, 476 U.S. 207, 211 (1986) and *United States v. Sandoval–Vasquez*, 435 F.3d 739, 743 (7th Cir. 2006)). "Warrantless searches and seizures within a home are considered presumptively unreasonable and a violation of the Fourth Amendment." *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010) (citing *United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007)).

However, "criminal offenders on community supervision have significantly diminished expectations of privacy." *United States v. Caya*, 956 F.3d 498, 500 (7th Cir. 2020). "More specifically, the privacy expectations of offenders on postimprisonment supervision are weak and substantially outweighed by the government's strong interest in preventing recidivism and safely reintegrating offenders into society." *Id*. Thus, the Supreme Court has upheld "warrantless," "no-suspicion search[es] of a parolee," at least where there also existed a "release condition, regulation, or statute" authorizing such a search. *Id*. at 503 (citing *Samson v. California*, 547 U.S. 843

(2006)); *Samson*, 547 U.S. at 846 (addressing a search conducted on a public street under a state law authorizing parole and law-enforcement officers to search parolees "with or without a search warrant and with or without cause." (internal citations omitted). Below, the Court will explain how this precedent applies to the facts and laws implicated here.

The Court finds that Defendants are entitled to summary judgment as to O'Boyle's unlawful entry claim because it was constitutional for them to enter O'Boyle's residence. An independent basis for granting Defendants summary judgment is that they are entitled to qualified immunity, in any event, because their entry was not in violation of a clearly established right. The Court will explain each of these bases in turn.

First, Defendants' entry was constitutional because O'Boyle was on extended supervision as a result of his felony conviction in his State Case at the time of their entry and because there exists a Wisconsin statute that authorizes Defendants to enter the residence of an extended supervisee as long as there exists reasonable suspicion of wrongdoing, and here, Defendants had not just reasonable suspicion, but probable cause. *See infra* Section 4.1. The applicable Wisconsin law here comes in the form of 2013 Wisconsin Act 79, *see Caya*, 956 F.3d 500, which provides that:

> A person released under this section, his or her residence, and any property under his or her control may be searched by a law enforcement officer at any time during his or her period of supervision if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision.

WIS. STAT. § 302.113(7r).[10] As the *Caya* court explained, Wisconsin's extended supervision program is effectively "parole by another name." 956 F.3d at 503. Under the governing Supreme Court precedent established in *Samson*, 547 U.S. 843—which, as a reminder, allows for suspicionless searches in parolee cases—the *Caya* court upheld the constitutionality of Act 79 searches, which, as noted above, require at least reasonable suspicion for warrantless searches of an extended supervisee's residence. 956 F.3d at 503.

Since the standard for probable cause is greater than that of reasonable suspicion, *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000) ("Reasonable suspicion . . . is something less than probable cause and more than a hunch." (citing *United States v. Tipton*, 3 F.3d 1119 (7th Cir. 1993))), this means that Defendants had more than enough justification to enter the O'Boyle's residence. *United States v. Chang*, 999 F.3d 1059, 1063 (7th Cir. 2021) (noting that Act 79 "authorizes a law enforcement officer" who has reasonable suspicion to not only enter, but to conduct a search of the property of someone on extended supervision "without consent, a warrant, or probable cause").

---

[10]This Court rejects O'Boyle's argument (which appeared in a letter to the Court well past the summary judgment briefing deadline) that "Defendants never mentioned ***Act 79*** on November 24, 2022," the date of the incident, and, therefore, cannot utilize it now, ECF No. 95 at 1. Nothing in the statute's plain language requires "officers to refer to the search as an 'Act 79 search' either prior to its execution or in subsequent communications." *United States v. Wicks*, No. 20-CR-143-JPS, 2021 WL 4786307, at *2 (E.D. Wis. Oct. 13, 2021) (citing *United States v. Berkos*, 543 F.3d 392, 398 (7th Cir. 2008)); *Slater*, 2022 WL 558097, at *22 (citing *Wicks*, 2021 WL 4786307, at *2) (rejecting the same argument). To the extent that O'Boyle separately challenges whether Defendants timely raised the Act 79 as a defense in this litigation, ECF No. 95 at 1, the Court will also dispense with that argument because, as Defendants point out, they included it as one of their affirmative defenses. ECF No. 96 at 2 (citing ECF No. 49 at 21).

O'Boyle correctly observes, ECF No. 89 at 3, that, as a *general* matter, "when the police . . . enter a home to arrest, if they have not obtained a warrant in advance, the entry and arrest are presumptively unlawful."[11] *State. v. Ferguson*, 767 N.W.2d 187 ¶ 17 (Wis. 2009) (citing *Payton*, 445 U.S. at 586; *State v. Roberson,* 717 N.W.3d 111 ¶ 31 n.12 (Wis. 2006); and *State v. Hughes,* 607 N.W.3d 621 (Wis. 2000)). However, his recitation of the law and analysis thereof is incomplete, as it does not analyze how this law applies to Wisconsin citizens on extended supervision. *See* ECF No. 87 at 20 (contending that *Payton* extends only to "law-abiding citizens" (citing *Payton,* 445 U.S. at 585)); *id*. at 21 (arguing that, per *Caya* and Act 79, Defendants did not need a warrant (or exigency) to arrest O'Boyle). None of the cases O'Boyle recites as requiring a warrant to enter the premises—including *Ferguson*—involve a parolee, an extended supervisee, or even a probationer, nor were any of them decided after the enactment of Act 79. *See* ECF No. 89 at 2–3. In fact, his selection of authorities, other than *Ferguson*, merely elaborate on what one must show to establish consent or exigent circumstances, giving the Court little more than a non-exhaustive list of exceptions to the warrant requirement. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (discussing elements of consent); *State v. Kiekhefer*, 569 N.W.2d 316, 475 (Wis. Ct. App. 1997) (same) (citing *Schneckloth*, 412 U.S. at 222); *Gautreaux v. State*, 190 N.W.2d 542, 543 (Wis. 1971) (same) (internal citations omitted).

In failing to provide pertinent authority in support of his position that Defendants needed more than just reasonable suspicion to enter his

---

[11]Because the whole quote also speaks to O'Boyle's argument on his unlawful arrest claim, discussed later this in this section, the Court includes it here.

residence at a time when he was on extended supervision, the Court considers his argument challenging the lawfulness of Defendants' entry waived. *Heather M. v. Berryhill*, 384 F. Supp. 3d 928, 934–35 (N.D. Ill. 2019) (collecting cases); *Norris v. Allstate Ins. Co.*, No. 3:22-CV-784 JD, 2023 WL 2571685, at *2 (N.D. Ind. Mar. 17, 2023) ("[E]ven pro se litigants are expected to file legal arguments with supporting authority because '[a] litigant who fails to press a point by supporting it with pertinent authority or by showing why it is sound despite a lack of supporting authority forfeits the point.'" (quoting *Mathis v. N.Y. Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998))).

Second, O'Boyle does not respond at all to Defendants' argument that even if Defendants' arrest of O'Boyle was an unconstitutional arrest, qualified immunity applies. ECF No. 87 at 5–6, 9–11, 18–19, and 21*; see generally* ECF No. 89. This is fatal to his claim because "[o]nce a defendant raises a qualified-immunity defense, it becomes the plaintiff's burden to defeat it." *Strother v. Scott*, 1:20-cv-00063-SEB-MJD, 2021 WL 4477873, at *3 (S.D. Ind. Sept. 30, 2021) (citing *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013)). To defeat Defendants' qualified immunity defense, O'Boyle "needed to show—for each federal claim asserted—that (1) [Defendants] violated [his] constitutional right[]; and (2) the right was clearly established at the time of the challenged conduct." *Id.* (citing *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017)). As in *Scott*, "[t]he words 'qualified immunity' are absent from [O'Boyle's] brief and the words 'clearly established'" are—even worse than in *Scott* (where this phrase was mentioned once in the plaintiffs' brief)—never mentioned, not even once. *Id.*; *see generally* ECF No. 89. O'Boyle has, therefore, waived any argument that Defendants are not entitled to qualified immunity in this case. *Scott*, 2021 WL 4477873, at *3

(citing *Laborers Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 2003) and *C & N Corp. v. Kane*, 756 F.3d 1024, 1026 (7th Cir. 2014)); *Thomas v. Carmichael*, 164 F.4th 1058, 1068 (7th Cir. 2026) (Ripple, J., dissenting) ("In his response to the defendants' motion for summary judgment, Mr. Thomas failed to respond to the defendants' assertion that they were entitled to qualified immunity. Such an omission generally renders any opposition to qualified immunity waived or forfeited.") (footnote omitted).

O'Boyle's unlawful entry claim cannot survive for two independent reasons. First, Defendants needed only reasonable suspicion—and they had probable cause, *see supra* Section 4.1—because O'Boyle was on extended supervision at the time of their entry and O'Boyle provides no pertinent authority to challenge that Act 79, coupled with the Seventh Circuit's decision in *Caya*, justifies Defendants' entry. Second, Defendants have argued that they are entitled to qualified immunity even if the Court finds an unlawful entry here because the circumstances did not amount to a clearly established right preventing entry, and O'Boyle fails to address this argument.

**4.3 Unlawful Arrest**

"Officers violate the Fourth Amendment if they arrest an individual without probable cause." *Bartz v. Columbia County*, No. 24-cv-671-jdp, 2026 WL 574621, at *2 (W.D. Wis. Mar. 2, 2026) (citing *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). Because, as Defendants correctly note, probable cause is an absolute defense to an unlawful arrest claim. ECF No. 87 at 11 (citing *Abbott*, 705 F.3d at 713–14), and the Court has already found probable cause existed here, *see supra* Section 4.1, the Court finds that Defendants are entitled to summary judgment on the lawful arrest claim.

O'Boyle appears to argue that Defendants needed more than just probable cause to arrest him. But he waived this argument because he again fails to provide pertinent authorities in support of his position. *Berryhill*, 384 F. Supp. 3d at 934–35 (N.D. Ill. 2019) (collecting cases); *Norris*, 2023 WL 2571685, at *2 (N.D. Ind. Mar. 17, 2023) (citation omitted). In fact, one of the handful of authorities he selects opposes his position, that is, Wisconsin Statute § 968.07(1)(d). ECF No. 89 at 2. The plain language of that statute suggests that only probable cause is required to effectuate an arrest. WIS. STAT. § 968.07(1)(d) (noting that an officer can arrest if "[t]here are reasonable grounds to believe that [a] person is committing or has committed a crime."). Strengthening the Court's interpretation is that the provisions in the surrounding statutory subdivisions allow for arrests if an officer has a warrant (or reason to believe that a warrant has been issued). WIS. STAT. § 968.07(a)–(c); *Wittman v. Koenig*, 831 F.3d 416, 422 (7th Cir. 2016) ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." (quoting *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 681 N.W.2d 110 ¶ 46 (Wis. 2004))). Further supporting this interpretation is the Wisconsin Court of Appeals' recent decision in *State v. Benson*, 934 N.W.2d 568 (Table), 2019 WL 3418481 (Wis. Ct. App. July 30, 2019). There, albeit in an unpublished decision, the Wisconsin Court of Appeals found that Wisconsin Statute § 968.07(d) does not require officers to obtain consent or possess exigent circumstances to perform a warrantless arrest in a defendant's home. *Id.* ¶ 34 (Wis. Ct. App. July 30, 2019) (noting that "[i]t is . . . of no import that police perhaps could have taken the time to secure a warrant: a warrant is not required to effectuate an arrest supported by

probable cause" (citing WIS. STAT. § 968.07(1)(d)); *id*. ¶ 34 n.9 ("[P]olice did not need consent to arrest [the defendant] because the arrest was supported by probable cause").[12]

Meanwhile, the remaining authorities that O'Boyle cites in support of his position are unavailing. ECF No. 89 at 2 (citing *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998) and *Payton*, 445 U.S. at 585–90). Both cases, which supposedly establish that Defendants needed more than just probable cause, predate the enactment of Act 79 and do not engage the question of whether a warrantless arrest of a person on extended supervision, parole, probation is lawful. *Jenkins*, 147 F.3d 577 and *Payton*, 445 U.S. 573. In fact, in *Jenkins*, the Seventh Circuit determined that the defendant did not even arrest the plaintiff, indicating that the case contains no pertinent analysis. 147 F.3d at 583 (commenting only that the allegation was that defendant conducted an "unlawful arrest, that is, a seizure of her person without probable cause."). The Court is not persuaded by these inapposite cases.

O'Boyle's argument that Defendants unlawfully exercised "extra-jurisdictional arrest authority" fares no better. ECF No. 89 at 1 (citing WIS. STAT. § 175.40). The statute in contention provides that "[f]or any county having a population of 750,000 or more, if any law enforcement officer has territorial jurisdiction that is wholly or partially within that county and has authority to arrest a person within the officer's territorial jurisdiction, the

[12]In *Benson*, the state court never suggests that Benson was on extended supervision or probation at the time of the warrantless arrest in his house, a reality that the Court believes would have lowered the standard from requiring probable cause to merely having a reasonable suspicion that the defendant had committed a crime. *See generally State v. Benson*, 934 N.W.2d 568 (Table), 2019 WL 3418481 (Wis. Ct. App. July 30, 2019); *see supra* Section 4.2.

officer may arrest that person anywhere in the county." WIS. STAT. § 175.40(5)). The Court agrees with Defendants that this statute authorizes MPD to effectuate arrests anywhere within Milwaukee County, including at O'Boyle's residence in Greenfield. ECF No. 87 at 17 (citing WIS. STAT. § 175.40(5)). To reach this conclusion, the Court takes judicial notice of the fact that Milwaukee County has more than 750,000 people.[13] FED. R. EVID. 201(b); *Helvey v. Acting Warden of FCI Greenville*, No. 3:25-cv-00837-NJR, 2026 WL 555357, at *2 (S.D. Ill. Feb. 27, 2026) ("Examples of materials properly the subject of judicial notice include population data, geographic facts, weather records, and government records." (citing 21B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 5106.3 (2d ed.))); *see, e.g.*, *Skolnick v. Bd. of Comm'rs of Cook Cnty.*, 435 F.2d 361, 363 (7th Cir. 1970) (taking judicial notice of the census data); *Marshall v. Village of Dwight*, 22-cv-01228-JES-JEH, 2023 WL 2316178, at *3 (C.D. Ill. Mar. 1, 2023) (same); *Buchanan-Moore v. City of Milwaukee*, 576 F. Supp. 2d 944, 954 (E.D. Wis. 2008) (same).

O'Boyle's arguments as to why the statute does not apply here are unpersuasive. O'Boyle first argues that the plain language of Wisconsin Statute § 175.40(5) requires that MPD arrest individuals only "in public," but the statute does not say that, and the Court declines to read in such a limitation. *Cf. Keith v. Sullivan*, 956 F.3d 1478, 1482 (E.D. Wis. 1997) ("The respondents' analysis of Wisconsin's civil commitment statute is flawed in that it assumes that the statute's requirement that the 'sexually violent' prisoner be within 90 days of release is also a requirement that the

[13] *City and Town Population Totals: 2020-2025*, U.S. CENSUS BUREAU, https://www.census.gov/data/tables/time-series/demo/popest/2020s-counties-total.html (last visited June 24, 2026) [https://perma.cc/C8EQ-LKVS].

commitment be based solely on the conviction for which the prisoner is incarcerated. A plain-reading of the statute, however, reveals no such requirement."); *Johnson v. Larson-Smith*, 13–cv–309–wmc, 2015 WL 3755965, at *5 (W.D. Wis. June 16, 2015) (declining to require prisoner to plead in detail every grievance before he can be said to have exhausted remedies, in part, because the "Wisconsin Administrative Code contains no such requirement" (citing *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002)).[14]

His remaining arguments fare no better, as they are predicated on 1) what MPD officers would need to show if they made an arrest outside their jurisdiction (such as in a case of hot pursuit) and 2) the implied notion that the City of Greenfield is not part of Milwaukee County. ECF No. 89 at 1 (internal citations omitted). However, the Court will take judicial notice of the fact that City of Greenfield is part of Milwaukee County[15] and will dispense with his remaining arguments. FED. R. EVID. 201(b); *Helvey*, 2026 WL 555357, at *2 (citation omitted).

Because there was probable cause in this case, *see supra* Section 4.1, and because O'Boyle wholly fails to provide pertinent legal authority that more than probable cause was legally necessary for MPD to arrest him in his residence on November 24, 2022, the Court will grant summary judgment to Defendants on O'Boyle's unlawful arrest claim. As an independent basis for this holding, the Court will grant summary judgment

---

[14]O'Boyle also argues that Defendants needed to obtain "additional arrest authority," ECF No. 89 at 2, but the Court sees no authority or reason to suggest this is true, and O'Boyle has provided none.

[15]*About Us*, CITY OF GREENFIELD https://www.ci.greenfield.wi.us/1022/About-Us (last visited June 24, 2026) [https://perma.cc/VV2J-GLMZ] ("Located in southwestern Milwaukee County, Greenfield covers more than 12 square miles . . . .").

to Defendants on the unlawful arrest claim because O'Boyle fails to address Defendants' invocation of qualified immunity in any way. *See supra* Section 4.2.

### 4.4 False Imprisonment under Fourth Amendment

"False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (speaking in the context of § 1983 claims like this one). "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is." *Id*. at 388–89 (citations omitted). As such, "a plaintiff may establish . . . a § 1983 claim . . . [for] false imprisonment . . . where his freedom of movement was limited or restrained in some way without probable cause." *Bentz*, 577 F.3d at 780 (citing *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008)) (additional citation omitted).

The Court will grant summary judgment to Defendants as to O'Boyle's federal false imprisonment claim. ECF No. 81 at 3 n.5 (noting that O'Boyle has a false imprisonment claim that he believes sounds in both federal and state law). Because Defendants had probable cause to arrest O'Boyle, *see supra* Section 4.1, and because probable cause is an absolute defense to false imprisonment—*Abbott*, 705 F.3d at 713–714 (citation omitted)—the Court will grant summary judgment to Defendants on this claim.

As an independent basis for this holding, the Court will grant summary judgment to Defendants as to O'Boyle's Fourth Amendment false

imprisonment claim because O'Boyle fails to address Defendants' invocation of qualified immunity in any way. *See supra* Section 4.2.

**4.5 Excessive Force**

"An officer's use of force is unreasonable from a constitutional point of view if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Green v. Chvala*, 567 F. App'x 458, 461 (7th Cir. 2014) (quoting *Gonzalez*, 578 F.3d at 539. "Significant force may not be used on nonresisting or passively resisting suspects." *Id*. (citing *Abbott*, 705 F.3d at 732).

The Court will grant summary judgment to Defendants as to O'Boyle's excessive force claim. In the parties' joint statement of undisputed facts, O'Boyle agreed that he "does not allege any injury arising from the manner in which he was secured; he claims only that warrantless seizure within his home was objectively unreasonable (i.e.[,] excessive) under the circumstances." ECF No. 81 at 8. In other words, O'Boyle's excessive force claim depends on Defendants' November 24, 2022 entry and arrest being unlawful—to the extent he even seeks to pursue the claim at all. *See generally* ECF No. 89 at 5 (not discussing excessive force once). Therefore, because the Court has found that Defendants' entry and arrest of O'Boyle were lawful, *see supra* Sections 4.2 and 4.3, his excessive force claim must also fail.

Further, O'Boyle fails to state a claim for excessive force. *Townsel v. Jamerson*, 240 F. Supp. 3d 894, 904 (N.D. Ill. 2017) (noting that the Supreme Court and the Seventh Circuit have "held that 'there cannot be *excessive force* without *some* force'" (quoting *McNair v. Coffey*, 279 F.3d 463, 467 (7th Cir. 2002) and citing *Chriswell v. Village of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *9 (N.D. Ill. Nov. 4, 2013), *aff'd sub nom. by Chriswell v. O'Brien*,

570 F. App'x 617 (7th Cir. 2014) and *Mannix v. Humer*, No. 10 C 5063, 2011 WL 116888, at *3 (N.D. Ill. Jan. 11, 2011))). The Court will accordingly grant summary judgment to Defendants on O'Boyle's excessive force claim.

**4.6 Unlawful Post-Seizure Detention/Arrest**

The Fourth Amendment protects individuals against "unreasonable . . . seizures." U.S. CONST. AMEND. IV. "A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Isreal v. Chovance*, No. 24-CV-18-JPS, 2024 WL 385912, at *3 (E.D. Wis. Feb. 1, 2024) (quoting *California v. Hodari D.*, 499 U.S. 621, 628–29 (1991) (internal brackets and quotation marks omitted)). "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) (citation omitted).

The Court will grant summary judgment to Defendants on O'Boyle's post-seizure detention/arrest claim. Although the parties do not agree on the timeline that forms the basis of this claim, Defendants are entitled to summary judgment under either proposed timeline.

Defendants seem to suggest that any potential liability would be limited to the time between 2:15 to 3:07 a.m., which was the timeframe during which Defendants escorted O'Boyle to the police station, because at 3:07 a.m. DOC "issued a 'hold' to detain O'Boyle . . . based on new criminal activity and violating the terms of supervision." ECF No. 87 at 3 (citing ECF No. 85-12); ECF No. 87 at 24 (arguing that "the Department [of Corrections] exercised independent authority in ordering him held which constitutes an intervening, superseding event that terminates these defendant-officers'

liability for Plaintiff's continuing detention"). O'Boyle argues his detention both before and after 3:07 a.m. was unlawful. *See* ECF No. 89 at 5 ("Defendants' . . . assertion that [O'Boyle] has been held pursuant to DOC authority since 3:07 am on November 24, 2022, and that even if his initial arrest and detention were unlawful, these Defendants are only personally liable for his confinement between 2:15 and 3:07 am, is simply untrue . . . .").

On the one hand, to the extent the relevant period is 2:15 a.m. to 3:07 a.m. (the time transporting O'Boyle to the police station), this detention is "part and parcel to [his] arrest," *Mutter v. Sanders*, 611 F. Supp. 2d 837, 843 (C.D. Ill. 2009) (citing *Kato*, 549 U.S. at 390), and the Court has already found his arrest to be lawful. *See supra* Section 4.3. Therefore, O'Boyle cannot advance an unlawful detention claim within this timeline. *Van Dyke v. Cook Cnty. Sheriff's Off.*, No. 21-CV-01448, 2022 WL 4483835, at *9 (N.D. Ill. Sept. 27, 2022) ("Plaintiff fails to allege a plausible Fourth Amendment false arrest claim . . . . And because she cannot allege a false arrest claim, her claim for unlawful detention . . . based on that arrest also fails."); *Olzinski v. Maciona*, 714 F. Supp. 401, 408 (E.D. Wis. 1989) ("[T]he existence of sufficient cause for arrest precludes any section 1983 claim for unlawful arrest and detention." (citing *Mark v. Furay*, 769 F.2d 1266, 1268–69 (7th Cir. 1985))).

Because Defendants are entitled to qualified immunity as to the unlawful arrest, *see supra* Section 4.3, they are also, by this same logic, entitled to qualified immunity as to the unlawful detention. *Robinson v. Gerritson*, 210 F.2d 1004, 1013 (N.D. Ill. 2002) ("Robinson's unconstitutional detention claim still fails. And that is so for precisely the same reason that was fatal to her unlawful arrest claim: that a reasonable officer could have concluded, even if mistakenly, that there was probable cause to arrest her."); *Hill v. City of Harvey*, 732 F. Supp. 3d 862, 876 (N.D. Ill. 2024)

("[Q]ualified immunity protects officers who have a reasonable, albeit mistaken belief that probable cause existed" to arrest a person) (citing *Abbott*, 705 F.3d at 715 and citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991))).

And, to the extent that O'Boyle challenges the restraint on his liberty after he arrived the police station at 3:07 a.m., that argument falls flat because he fails to meaningfully engage with Defendants' argument that he was then in DOC custody—owing to his status as an extended supervisee under investigation under Wisconsin Statute § 302.113(8m)(a)—rather than MPD custody. ECF No. 87 at 3, 24–25; *c.f. Swanigan v. Trotter*, 645 F. Supp. 2d 656, 677 (N.D. Ill. 2009) ("An arresting officer is not responsible for the plaintiff's detention once he turns the plaintiff over to jailers at the police station." (citing *Tibbs v. City of Chicago*, 469 F.3d 661, 665 (7th Cir. 2006))). Defendants are, therefore, entitled to summary judgment on O'Boyle's unlawful post-seizure detention/arrest claim.

**4.7 Failure to Intervene under Federal Law**

To succeed on his failure to intervene claim, O'Boyle "must demonstrate that . . . Defendants (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). As explained *infra* Sections 4.1–4.6, there were no "underlying constitutional violation[s]," committed against O'Boyle here, leaving his federal failure to intervene claim with "no legs to stand on." *Higgins v. Jeffreys*, No. 3:23 C 50038, 2026 WL 1266186, at *14 (N.D. Ill. May 8, 2026) (citing *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)). As such, the Court must grant summary judgment to Defendants as to O'Boyle's federal failure to intervene claim.

### 4.8 State Law Claims

O'Boyle also alleges false imprisonment and failure to intervene claims under state law. ECF No. 81 at 3 n.5 (noting that O'Boyle alleges a false imprisonment claim not just under federal law, but state law as well); *see Herbst v. Wuennenberg*, 266 N.W.2d 391, 394–95 (Wis. 1978) (discussing tort of false imprisonment under state law); WIS. STAT. § 175.44(4) (duty to intervene statute in cases of excessive force).[16] Because the Court has ruled in favor of Defendants on all of O'Boyle's federal law claims, it declines to exercise jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). *See also Pyles v. Daily*, No. 19-cv-1067-JPG, 2023 WL 3978513, at *7 (S.D. Ill. June 13, 2023) (citing *Braun v. Village of Palatine*, 56 F.4th 542, 545 (7th Cir. 2022), *reh'g denied*, No. 20-3227, 2023 WL 2188741 (7th Cir. Feb. 23, 2023) (affirming relinquishing jurisdiction over remaining state law claims after finding that officer had probable cause to arrest plaintiff on a § 1983 claim).

## 5. CONCLUSION

For the forgoing reasons, the Court concludes that none of O'Boyle's federal law claims withstand summary judgment. The Court will, therefore, grant summary judgment as to the federal law claims, which will be dismissed with prejudice. The Court will decline to exercise supplemental jurisdiction over O'Boyle's remaining state law claims, which will be dismissed without prejudice. With all claims having been addressed, the case will be dismissed.

---

[16]The Court notes that "'there is no general duty to intervene' under Wisconsin law." *Voss v. Kauer*, 18-cv-848-jdp, 2019 WL 144696, at *2 (W.D. Wis. Jan. 9, 2019) (quoting *Winslow v. Brown*, 371 N.W.2d 417, 419 (Wis. Ct. App. 1985)).

Accordingly,

**IT IS ORDERED** that Defendants Mark Sheremeta, Ana Romero-Perez, Kristopher Maduscha, Nash Dathe, Nathan Locicero, and Shawn Humitz's motion for summary judgment, ECF No. 80, be and the same is hereby **GRANTED in part**, to the extent it concerns Plaintiff Ryan O'Boyle's federal law claims;

**IT IS FURTHER ORDERED** that Plaintiff Ryan O'Boyle's federal law claims be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over Plaintiff Ryan O'Boyle's state law claims, which be and the same are hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff Ryan O'Boyle's motion for summary judgment, ECF No. 89, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* FED. R. APP. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* FED. R. APP. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* FED. R. CIV. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RYAN P. O'BOYLE,<br><br>Plaintiff,<br><br>v.<br><br>MARK SHEREMETA, ANA ROMERO-PEREZ, KRISTOPHER MADUSCHA, NASH DATHE, JUAN GARCIA, NATHAN LOCICERO, and SHAWN HUMITZ,<br><br>Defendants. | Case No. 24-CV-895-JPS<br><br>**JUDGMENT** |

**Decision by Court**. This action came on for consideration before the Court and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that Defendant Juan Garcia be and the same is hereby **DISMISSED without prejudice** from this action (ECF No. 61);

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendants Mark Sheremeta, Ana Romero-Perez, Kristopher Maduscha, Nash Dathe, Nathan Locicero, and Shawn Humitz's motion for summary judgment, ECF No. 80, be and the same is hereby **GRANTED in part**, to the extent it concerns Plaintiff Ryan O'Boyle's federal law claims (ECF No. 98);

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff Ryan O'Boyle's federal law claims be and the same are hereby **DISMISSED with prejudice** (ECF No. 98);

**IT IS FURTHER ORDERED AND ADJUDGED** that, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction

over Plaintiff Ryan O'Boyle's state law claims, which be and the same are hereby **DISMISSED without prejudice** (ECF No. 98); and

**IT IS FURTHER ORDERED AND ADJUDGED** that this action be and the same is hereby **DISMISSED** (ECF No. 98).

APPROVED:

J.P. Stadtmueller
U.S. District Judge

LINDA M. KLEMM
Clerk of Court

August 31, 2026
Date

*s/ Jodi L. Malek*
By: Deputy Clerk